IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS C. A.,<br><br>       Petitioner,<br><br>v.<br><br>CHARLES GREEN,<br><br>       Respondent. | HON. JOHN MICHAEL VAZQUEZ<br><br>Civil Action<br>No. 18-1004 (JMV)<br><br>**OPINION** |

**VAZQUEZ, District Judge:**

**I.    INTRODUCTION**

Petitioner has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his prolonged immigration detention. (ECF No. 1.) For the reasons stated herein, the petition is granted.

**II.    BACKGROUND**

Petitioner is a native and citizen of Trinidad and Tobago. (*See*, *e.g.*, ECF No. 1 at PageID: 15.) He arrived in the United States on December 12, 1994 as a lawful permanent resident. (*Id.*) On June 22, 2012, Petitioner was convicted in New Jersey Superior Court of (i) fraudulent use of a credit card, N.J.S.A. § 2C:21-6(h); (ii) theft by deception, N.J.S.A. § 2C:20-4; (iii) wrongfully impersonating, obtaining, and using another's identity, N.J.S.A. § 2C:21-17(a)(4); and (iv) conspiracy to wrongfully impersonate, obtain, and use another's identity, N.J.S.A. § 2C:5-2(a)(1). (*Id.*) Petitioner was arrested and taken into custody by the United States Department of Homeland Security ("DHS") on May 24, 2017. (*Id.*) Petitioner has been detained at the Essex County Correctional Facility in Newark since that time. (*See*, *e.g.*, Pet'r's May 16, 2018 Reply, ECF No. 8.)

Upon being taken into custody, DHS served Petitioner with notices informing him, among other things, that he was being detained pursuant to 8 U.S.C. § 1226(c), and that he could request a custody redetermination hearing in which DHS's custody decision would be reviewed by an immigration judge ("IJ"). (*See* ECF Nos. 7-1 and 7-2.) Petitioner requested a redetermination hearing on May 24, 2017. (ECF No. 7-2 at PageID: 66.) Petitioner avers – and Respondent does not dispute – that no such custody redetermination hearing has been held. (*See*, *e.g.*, Pet'r's Reply, ECF No. 8; *accord* Apr. 20, 2018 Declar. of Elizabeth Burgus ¶ 3, ECF No. 7-7 at PageID: 103 ("The [IJ] took no action of [Petitioner's] request for bond.").)

On June 19, 2017, IJ Mirlande Tadal issued a Decision and Order in which she expressly found that several of Petitioner's identify-theft related convictions are offenses covered under Immigration and Naturalization Act ("INA") § 237(a)(2)(A)(iii).[1] (*See* ECF No. 7-4 at PageID: 82.) In so doing, IJ Tadal also implicitly found that Petitioner's detention was governed by 8 U.S.C. § 1226(c). *See* 8 U.S.C. § 1226(c)(1)(B) ("The Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section [1227(a)(2)(A)(iii)] of this title[.]).

On March 14, 2018, IJ Leo A. Finston held a merits hearing on Petitioner's immigration claims.[2] (Burgus Declar. ¶ 9, ECF No. 7-7 at PageID: 103.) On that date, IJ Finston issued a written order (i) denying Petitioner's requests for asylum and protection under the Convention Against Torture, (ii) granting Petitioner's request for a withholding of removal to Trinidad and Tobago, and (iii) ordering Petitioner's removal from the United States. (*See* ECF No. 7-5.) On

---

[1] Section 237(a)(2)(A)(iii) of the INA is codified at 8 U.S.C. § 1227(a)(2)(A)(iii).

[2] Petitioner appeared before the immigration court for non-merits hearings on June 14, 2017; July 19, 2017; August 10, 2017; September 27, 2017; and January 11, 2018. (Burgus Declar. ¶¶ 3-8, ECF No. 7-7 at PageID: 103.)

April 9, 2018, Petitioner appealed that decision to the Board of Immigration Appeals. (See ECF No. 7-6.) Petitioner's appeal to the BIA remains pending. (*See* Burgus Declar. ¶ 10, ECF No. 7-7 at PageID: 104.)

Petitioner filed his habeas corpus petition on January 25, 2018 (the "§ 2241 Petition"). (ECF No. 1.) Respondent (hereinafter the "Government") filed its answer to the § 2241 Petition on April 24, 2018. (ECF No. 7.) Petitioner filed his reply on May 16, 2018. (ECF No. 8.)

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). The Court has jurisdiction because Petitioner asserts that his continued detention violates due process and he is currently detained within this Court's jurisdiction by a custodian within the jurisdiction. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

## IV. ANALYSIS

Petitioner contends that his ongoing detention pursuant to 8 U.S.C. § 1226(c) violates his right to due process as he has been held overlong without a bond hearing. (ECF No. at PageID: 1.) The Government argues that the current § 2241 Petition should be denied because "Petitioner's detention pursuant to 8 U.S.C. § 1226(c)[3] remains lawful and is not a violation of the Due Process

---

[3] The Court agrees with Petitioner and the Government that Petitioner is currently being detained pursuant to 8 U.S.C. § 1226(c).

Clause of the Fifth Amendment." (Gov't Br., ECF No. 7 at PageID: 43.) The Government claims that this "is not an outlier or extraordinary case, and [Petitioner's] detention continues to fulfill the purpose of facilitating deportation and protecting against flight or dangerousness." (*Id.* at PageID: 57.)

In *Dryden v. Green*, No. 2:18-cv-2686 (SDW), 2018 WL 3062909 (D.N.J. June 21, 2018), Judge Wigenton summarized the current state of the law with respect to individuals detained under § 1226(c):

> The Supreme Court first considered the propriety of prolonged detention pursuant to § 1226(c) in *Demore v. Kim*, [538 U.S. 510] (2003). Upon a review of the statute, the authority of Congress to detain aliens pending removal, and the usual time frame associated with detention under the statute, the Court determined in *Demore* that the statute was facially constitutional as "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at [531]. In reaching this conclusion, the Court noted that in most cases detention under the statute lasted only a month and a half and that even in cases where an appeal was taken to the [BIA], detention pursuant to § 1226(c) lasted an average of four months, indicating that detention under the statute was often brief and had a defined beginning and end point in the form of the conclusion of removal proceedings. *Id.* at [529]. Ultimately, as the Court found the statute constitutional, the *Demore* Court rejected Petitioner's challenge even though Petitioner had spent slightly longer than average in detention – a period of approximately six months. *Id.* at [530]. Thus, after *Demore* it was clear that immigration detention under § 1226(c) was facially valid, and that detention for less than six months would not be sufficient to support an as applied challenge to detention under the statute.
>
> In *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231-35 (3d Cir. 2011), however, the Third Circuit concluded that detention under § 1226(c) would become constitutionally suspect if it continued for a prolonged period of time well beyond the six months discussed in *Demore*. In that case, the Third Circuit explained that while mandatory detention without an individualized hearing for a brief period, such as that discussed in *Demore*, was constitutionally sound, excessively prolonged detention would be unreasonable and "when detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of

4

proving that continued detention is necessary to fulfill the purposes of the detention statute." *Id.* at 233. Turning to the statute itself, the Third Circuit found that, in cases involving prolonged detention lasting several years, mandatory detention could become unreasonable and thus unconstitutional if that detention continued absent a hearing. The Court of Appeals, however, did "not believe that Congress intended to authorize prolonged, unreasonable detention without a bond hearing," and thus determined that § 1226(c) must be read to "contain[ ] an implicit limitation of reasonableness: the statute authorizes only mandatory detention that is reasonable in length [and the statute] yields to the constitutional requirement that there be a further, individualized, inquiry into whether continued detention is necessary to carry out the statute's purpose" when this "implicit limitation" is exceeded. *Id.* at 235.

The Third Circuit thus avoided its constitutional concerns with prolonged detention under § 1226(c) by reading this limitation into the statutory text. *Id.* Based on this implicit limitation, the *Diop* panel held that § 1226(c) "authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes." 656 F.3d at 231. The determination of whether a given period of detention is reasonable is a fact specific inquiry "requiring an assessment of all of the circumstances of a given case." *Id.* at 234. Reasonableness in this context is "a function of whether [continued detention without bond] is necessary to fulfill the purpose of the statute," specifically protecting the public and ensuring that the petitioner attends his removal proceedings. *Id.*

The Third Circuit refined this approach to the statute in *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015). In *Chavez-Alvarez*, the Third Circuit reiterated that § 1226(c) should be read to contain an implicit reasonableness limitation, and that detention beyond the point of reasonableness absent a bond hearing would be unconstitutional. *Id.* at 475. While the Third Circuit had declined to adopt a bright line rule for determining reasonableness based solely on the passage of time in *Diop*, *see* 656 F.3d at 234; *see also Carter v. Aviles*, No. 13-3607, 2014 WL 348257, at *3 (D.N.J. Jan. 30, 2014), the Third Circuit did provide guidance on that point in *Chavez-Alvarez*. Specifically, the Third Circuit in *Chavez-Alvarez* held that, at least where the Government fails to show bad faith on the part of the petitioner, "beginning sometime after the six-month timeframe [upheld by the Supreme Court in *Demore*, 538 U.S. at 532-33], and certainly by the time [the petitioner] had been detained for one year, the burdens to [the petitioner's] liberties [will

outweigh] any justification for using presumptions to detain him without bond to further the goals of the statute." 783 F.3d at 478. Thus, the Third Circuit held that the implicit time limitation the Third Circuit read into § 1226(c) would, in the ordinary case absent bad faith, be reached sometime prior to one year of detention. *Id.*

For several years, the *Chavez-Alvarez* [standard] remained the applicable rule for determining whether detention comported with Due Process in this circuit. The Supreme Court's February 2018 decision in *Jennings v. Rodriguez*, [138 S.Ct. 830] (2018), however, explicitly rejected the practice of reading implicit time limitations into unambiguous statutes such as § 1226(c). As the Court explained in *Jennings*,

> [Section] 1226 applies to aliens already present in the United States. Section 1226(a) creates a default rule for those aliens by permitting – but not requiring – the Attorney General to issue warrants for their arrest and detention pending removal proceedings. Section 1226(a) also permits the Attorney General to release those aliens on bond, "[e]xcept as provided in [§ 1226(c)]." Section 1226(c) states that the Attorney General "shall take into custody any alien" who falls into one of the enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(c)(1). Section 1226(c) then goes on to specify that the Attorney General "may release" one of those aliens "*only if* the Attorney General decides" both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk. § 1226(c)(2) (emphasis added).

> [Section] 1226(c) does not on its face limit the length of the detention it authorizes. In fact, by allowing aliens to be released "only if" the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute. And together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope must continue "pending a decision on whether the alien is to be removed from the United States." § 1226(a).

> . . . the Court of Appeals held[ ] that § 1226(c) should be interpreted to include an implicit . . . time limit on the length of mandatory detention. . . . [T]hat interpretation falls far short of a plausible statutory construction.

> In defense of th[is] statutory reading, respondents first argue that § 1226(c)'s "silence" as to the length of detention "cannot be construed to authorize prolonged mandatory detention, because Congress must use 'clearer terms' to authorize 'long-term detention.'" . . . But § 1226(c) is not "silent" as to the length of detention. It mandates detention "pending a decision on whether the alien is to be removed from the United States," § 1226(a), and it expressly prohibits release from detention except for narrow, witness-protection purposes. Even if courts were permitted to fashion . . . time limits out of statutory silence, they certainly may not transmute existing statutory language into its polar opposite. The constitutional-avoidance canon does not countenance such textual alchemy.
>
> Indeed, we have held as much in connection with § 1226(c) itself. In *Demore*[, 537 U.S. at 529] (2003) we distinguished § 1226(c) from the statutory provision in *Zadvydas* by pointing out that detention under § 1226(c) has "a definite termination point": the conclusion of removal proceedings. As we made clear there, that "definite determination point" – and not some arbitrary time limit devised by the courts – marks the end of the Government's detention authority under § 1226(c).
>
> Respondents next contend that § 1226(c)'s limited authorization for release for witness-protection purposes does not imply that other forms of release are forbidden, but this argument defies the statutory text. By expressly stating that the covered aliens may be released "only if" certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative prohibition on releasing detained aliens under any other conditions.
>
> . . . .
>
> We hold that § 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings "only if" the alien is released for witness-protection purposes.

[*Jennings*, 138 S. Ct.] at 846-47.

Having determined that the statute contains no implicit time limitations, and having previously determined in *Demore* that § 1226(c) is facially constitutional, the Supreme Court observed that the only challenge to detention under § 1226(c) which remains viable after *Jennings* is an individual petitioner's challenge to the constitutionality of the statute as applied to him. *Id.* at 851-52. Because both *Diop* and *Chavez-Alvarez* based their holdings on the Court of Appeals' reading of an implicit reasonableness-based time limitation into § 1226(c), and because *Jennings* clearly rejected that approach, it is clear that *Jennings* has abrogated *Diop* and *Chavez-Alvarez*, and only an individualized as applied constitutional challenge to the statute remains for Petitioner and those in similar circumstances[.]

Although the Third Circuit's ultimate rulings in *Diop* and *Chavez-Alvarez* have been abrogated by *Jennings*, and those two cases are no longer binding upon this Court, it does not follow that those two cases should be ignored. The constitutional reasoning that underlay the Third Circuit's invocation of the constitutional avoidance canon still provides some persuasive guidance to how this Court should address § 1226(c) claims. Specifically, the Court accepts that the "constitutionality of [detention pursuant to § 1226(c) without a bond hearing] is a function of the length of the detention [and t]he constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past [certain] thresholds." *Chavez-Alvarez*, 783 F.3d at 474 (quoting *Diop*, 656 F.3d at 232, 234). This Court likewise is mindful that "any determination on reasonableness [must be] highly fact specific" and that "at a certain point – which may differ case by case[ ] – the burden to an alien's liberty outweighs" the Government's interest in detention without bond," *id.* at 474-75, and that detention which is so unreasonable as to amount to an arbitrary deprivation of liberty cannot comport with the requirements of the Due Process Clause. *Id.* at 474; *see also Demore*, [538 U.S. at 432] (Kennedy, J., concurring). Because, however, *Jennings* foreclosed the constitutional avoidance basis provided by the Third Circuit in its determination that detention will normally become suspect between six months and a year, and because *Jennings* leaves open only the question of whether § 1226(c) is unconstitutional as applied to the petitioner, it is insufficient that Petitioner's detention has merely become suspect by reaching this six month to a year threshold, in order for Petitioner to be entitled to release he must show that his ongoing detention is so unreasonable or arbitrary that it has actually violated his rights under the Due Process Clause. If Petitioner's detention has not become so unreasonable or arbitrary that continued application of the statute is unconstitutional as applied to

8

> Petitioner, § 1226(c) authorizes his continued detention until a final order of removal is entered and Petitioner would not be entitled to relief. *Jennings*, 138 S.Ct. at 846-47.

*Dryden*, 2018 WL 3062909 at *2-4.

As *Dryden* makes clear, "[u]ltimately, the detention of an alien will amount to an unconstitutional application of § 1226(c) where the alien's detention has become 'so unreasonable [that it] amount[s] to an arbitrary deprivation of liberty [which] cannot comport with the requirements of the Due Process Clause.'" *K.A. v. Green*, No. 2:18-cv-3436 (JLL), 2018 WL 3742631, at *3 (D.N.J. Aug. 7, 2018) (quoting *Dryden* at *4; also citing *Demore*, 538 U.S. at 432; *Chavez-Alvarez,* 783 F.3d at 474). Furthermore, "[w]hile it remains true following *Jennings* that 'aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would otherwise not get under the statute,' *Chavez-Alvarez*, 783 F.3d at 476, it also remains true that those aliens who are merely pursuing the remedies available to them in good faith should not be penalized for pursuing their legal rights." *K.A.*, 2018 WL 3742631, at *3 (also citing *Leslie v. Att'y Gen.*, 678 F.3d 265, 271 (3d Cir. 2012)).

It is against this legal backdrop that Chief Judge Linares recently granted habeas relief to a § 1226(c) detainee who had been held in immigration custody for nineteen months. *K.A.*, 2018 WL 3742631 at *4. The Chief Judge found that because this nineteen-month period of detention was not the result of the petitioner's own bad faith actions, his "continued detention, absent a bond hearing, [had become] so unreasonable as to amount to an arbitrary deprivation of liberty." *K.A.*, 2018 WL 3742631 at *4. The Chief Judge awarded habeas relief notwithstanding that "[s]ince *Jennings*, courts in this District have . . . largely found that detention for just over a year pursuant to § 1226(c) is insufficient to amount to an arbitrary deprivation of liberty and will thus not suffice to prove that the statute has been unconstitutionally applied." *K.A.*, 2018 WL 3742631 at *3 (citing

9

*Dryden*, 2018 WL 3062909 at *4-5 (detention for just over a year not unconstitutional); *Charles A. v. Green*, No. 2:18-cv-1158 (SDW), 2018 WL 3360765, at *5 (same); *Carlos A. v. Green*, No. 2:18-cv-741, 2018 WL 3492150, at *5 (detention for just over 13 months not unconstitutional)).

Here, Petitioner has been detained for approximately fifteen months. It is undisputed that Petitioner has never received a custody redetermination hearing since being detained on May 24, 2017, and that Petitioner's appeal to the BIA is still pending. The Court has no reason to conclude that either of these facts is attributable to "bad faith on the part of Petitioner." *K.A.*, 2018 WL 3742631 at *4. In light of the foregoing, and as was the case in *K.A.*, here:

> [T]he Court finds that Petitioner's detention has become so prolonged such that Petitioner's continued detention, absent a bond hearing, would be so unreasonable as to amount to an arbitrary deprivation of liberty. Petitioner's ongoing detention without a bond hearing thus amounts to an unconstitutional application of § 1226(c), and this Court will therefore grant Petitioner's habeas petition and order that an immigration judge provide Petitioner with a bond hearing within ten days. At that hearing, "the Government [will be required] to produce individualized evidence that [Petitioner's] continued detention was or is necessary" to further the goals of § 1226(c)−specifically ensuring that Petitioner presents neither a danger to the community nor a flight risk. *Chavez-Alvarez*, 783 F.3d at 477-78.

*K.A.*, 2018 WL 3742631 at *4; *accord Portillo v. Hott*, No. 118CV470LMBMSN, 2018 WL 3237898, at *8 (E.D. Va. July 3, 2018) (finding that petitioner's fourteen-month detention under § 1226(c) violated due process and requiring "respondents promptly to provide petitioner with a bond hearing at which the burden will be on the government to show by clear and convincing evidence that petitioner's continued detention is justified . . ."); *Mohamed v. Sec'y, Dep't of Homeland Sec.*, No. CV 17-5055 (DWF/DTS), 2018 WL 2392205, at *6 (D. Minn. Mar. 26, 2018), *report and recommendation adopted*, No. CV 17-5055, 2018 WL 2390132 (D. Minn. May 25,

2018) (finding that petitioner's fifteen-month detention under § 1226(c) was unreasonable in its application, and that due process entitled him to a bond hearing).

V. **CONCLUSION**

For the reasons stated above, the Court will grant Petitioner's § 2241 Petition. An immigration judge shall therefore be required to provide Petitioner with a bond hearing within twenty-one (21) days, at which the Government bears the burden of showing that Petitioner is either a danger to the community or a flight risk. An appropriate Order accompanies this Opinion.


8/29/18                                                      s/ John Michael Vazquez
Date                                                        JOHN MICHAEL VAZQUEZ
                                                               United States District Judge